[Civ. No. 36989. Second Dist., Div. One. Mar. 30, 1972.]

UNION PACIFIC RAILROAD COMPANY et al.,
Plaintiffs and Appellants, v.
CITY OF LONG BEACH et al., Defendants and Appellants.

596

## COUNSEL

Hanna & Morton, Harold C. Morton, John H. Blake, Edward S. Renwick and Bela G. Lugosi for Plaintiffs and Appellants.

Leonard Putnam, City Attorney, and Kenneth K. Williams, Deputy City Attorney, for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jay L. Shavelson, Assistant Attorney General, and Warren J. Abbott, Deputy Attorney General, as Amici Curiae on behalf of Defendants and Appellants.

## OPINION

**CLARK, J.**—At issue in this appeal is the constitutionality of two related City of Long Beach Municipal Code sections.

Section 6100.99.1, enacted in 1962, provides that "Every person conducting, managing or carrying on the business of producing oil from any well located in the City of Long Beach, including the City of Long Beach when functioning in the capacity of a unit operator, shall pay the sum or sums, in the manner and to the extent hereinafter provided," and that the sum due is to be paid quarterly in an amount "equaling three cents per quarter for each barrel of oil produced by each . . . well in excess of three hundred (300) barrels per quarter." The plaintiffs below, comprising individuals, corporations or partnerships involved in oil extraction in Long Beach, paid the tax levied by this ordinance and then brought suit to have their monies refunded on the ground that the section was invalid. The trial court ruled against the plaintiffs who now appeal.

Section 6100.99.2, also enacted in 1962 as a companion to the first, provides:

"In those situations where the City of Long Beach is serving in the capacity of a unit operator, and as such is required to pay the tax as hereinabove in section 6100.99.1 provided, the computed total amount of the tax due shall be paid by said City, as unit operator, and by its drilling and operating contractor in the proportions as determined by the pertinent provisions of the Drilling and Operating Contract between the City and said contractor.

"Whenever the tax required to be paid pursuant to the provisions of section 6100.99.1 is based upon oil production derived from unit wells located within the City of Long Beach, and the amount of any such tax so paid, in accordance with the terms and conditions of the particular unit and unit operating agreements covering and relating to such wells, is distributed among the respective working interest owners in proportion to their unit participation, that portion of such tax so paid, as determined by examination and audit made by the City Auditor, which is assignable as a unit expense to a committed tract consisting of tide and submerged lands theretofore granted to said City by the State of California, and which would be otherwise ultimately economically borne by said City and State, shall not be received into the General Purpose Fund but shall be deposited in the appropriate tideland trust fund and applied as an offset credit to any amounts theretofore disbursed from such fund in payment of the distributed share of such tax . . . ."

The trial court held this section to be invalid but severable from section 6100.99.1. The determination of invalidity is challenged by the City of Long Beach and the Long Beach Board of Harbor Commissioners, defendants below, who also appeal from an award of money to Long Beach Oil Development Company (L.B.O.D.), the drilling and operating con-

tractor for various wells of which the City of Long Beach was the unit operator. The latter portion of the judgment was based upon L.B.O.D.'s payment to the city of a share of the tax imposed on the city as unit operator under section 6100.99.1.

FACTS

Although substantial quantities of oil had been produced in the City of Long Beach for many years, it was not until 1938 that the Wilmington Oil Field was discovered beneath the tidelands and adjacent public and private uplands in the harbor area of the city. This discovery led the city board of harbor commissioners to enter into various agreements with oil companies whereby the latter acquired rights to take oil from city property in the harbor district. Oil resources underlying privately owned land on the uplands were simultaneously developed by private interests.

The Wilmington Field is divided into six fault blocks by five geological fault lines running in a northerly-southerly direction from the Pacific Ocean to the uplands. These fault lines prevent substantial migration of oil and gas from one fault block to another. Following concentrated extraction, subsidence of the overlying lands occurred but it has been arrested by repressurizing the independent units. The Legislature provided for unitized operation under the direction of the Supervisor of Oil and Gas (Pub. Resources Code, §§ 3315-3347) and authorized cities to participate therein (Pub. Resources Code, §§ 6879, 7058). Unit participation is also authorized by the Charter of the City of Long Beach. (§ 229x, subd. f.) Pursuant to statutory and charter authority, unit agreements and unit operating agreements were created providing for unitized operation of fault blocks II, III and IV and "Ranger Zone" of fault block V, encompassing not only Long Beach city tidelands but also some lands within the City of Los Angeles and private lands within Long Beach.

The agreements define the parties as either "working interest owners" or "royalty interest owners." The working interest owners, including the City of Long Beach and others who have extraction rights by virtue of either fee title, trust interests or contract rights, have the power to supervise and control the drilling, operating and repressuring of the land in each unit.

Each fault block is divided into segment one (the tide and submerged lands) and segment two (the uplands). The city is the "unit operator" of segment one in each unit. Plaintiff Union Pacific is the unit operator of segment two in fault blocks II and III; plaintiff Socony Mobil is unit

operator of segment two in fault block IV and in "Ranger Zone" of fault block V. Subject to the instructions of the working interest owners, each unit operator has the duty and the exclusive right to develop and operate its segment.

Further, "unit coordinators" have general administrative control over the activities of the unit operators, again subject to the instructions of the working interest owners. Plaintiff Union Pacific is the unit coordinator for fault blocks II and III, and plaintiff Socony Mobil is the unit coordinator for fault block IV and "Ranger Zone" of fault block V.

Each parcel of land within a unit was initially assigned a share of unit participation based on the ratio of its production to the total production from all parcels in the unit in 1958. Upon completion of engineering studies, each parcel's share of unit participation was to be determined by a specific formula. Whether such studies are complete is not clear from the record, but each working interest owner does have a voting right equal to its share of unit participation while no single working interest owner can control unit operations.

Production from all wells in a unit is commingled so that each working interest owner and royalty interest owner will receive his pro rata share of the total production from the unit. All production allocated to the tide and submerged lands (segment one) is deemed to have been produced from such lands.[1]

Each unit operating agreement contains provisions for the payment of local taxes which are shared among working interest owners according to their respective participating shares in the unit. Other provisions of the agreements concern the division of taxes between lessors (royalty interest owners) and lessees (working interest owners) of committed lands, requiring that where a lease provides for the sharing of taxes, those shared shall be allocated within the unit to their tract.

In practice, the city, in its capacity as unit operator, transmits quarterly payments computed on production from segment one lands and the respective unit operators of the segment two lands likewise pay such taxes. Subsequent to payments to the city, each unit coordinator charges a portion of the payment against the account of each working interest owner according to his participating percentage in the unit.[2] The city,

---

[1]This and the preceding six paragraphs are adapted from *City of Long Beach* v. *Vickers* (1961) 55 Cal.2d 153 [10 Cal.Rptr. 359, 358 P.2d 687].

[2]Because repressurization operations result in the production of more oil in the tidelands portion of each unit than is allocated to the city under the unit agreements, periodic accounting adjustments are made to compensate for the city's payment of

acting as unit operator, draws not from the city's general purpose fund but rather from a harbor revenue fund in making its quarterly payments. Money received from the sale of oil allocated to the city as a working interest owner is deposited in this fund and the city's obligations as a working interest owner are paid from it. The taxes paid by the city as a unit operator to itself as a taxing municipality are allocated between the city as a working interest owner and the city's drilling and operating contractor, L.B.O.D., pursuant to the terms of their contract. The portion of the tax attributable under the contract to L.B.O.D is paid into the city's general purpose fund; the portion attributable to the city's working interest is returned to the harbor revenue fund.

## PLAINTIFFS' APPEAL

Plaintiffs contend on appeal that section 6100.99.1, under which they are required to pay a business license tax imposed upon those in the business of producing oil, is invalid for several reasons. First, they argue that the section is unconstitutionally uncertain in its reference both to the persons taxed and to the measure of the tax and that the invalidity of its companion section introduces an additional element of uncertainty into the administration of the tax.

Secondly, they contend that the section is invalid because it operates without uniformity upon the members of the class taxed. In this regard they argue that, if the tax is imposed upon the owners of production, it is invalid because some owners of production pay no tax whatever. If it is imposed upon working interest owners, it is still invalid, they maintain, because some working interest owners are burdened with royalties. If the tax is in effect an ad valorem tax, they assert it operates discriminatorily and in violation of article XIII, section 1, of the California Constitution by exempting from taxation the first 300 barrels produced quarterly from each well.

The third argument, which is related to the first two, is that defects in the class taxed create a lack of uniformity in the operation of the tax. The 300-barrel exemption discriminates, they argue, in favor of the smaller producers. As to Union Pacific Railroad Company, which is a railroad within the meaning of California Constitution, article XIII, section 14, they maintain that the section imposes a greater tax upon it than upon other businesses operating within the state in violation of the cited constitutional provision.

taxes in excess of that allocable to tidelands producers, but these do not in any way affect the manner in which the tax operates.

The final argument is that section 6100.99.2 is invalid and, since the two sections are inseparable, section 6100.99.1 must fall with section 6100.99.2.

## DISCUSSION

■ Plaintiffs' first contention is without merit. They argue that the phrase "every person conducting, managing or carrying on the business of producing oil" can be interpreted as referring to a number of persons occupying widely disparate roles with respect to the extraction of oil (from drillers and operators, to the owners of the right to drill, to the owners of production, to unit operators) and therefore section 6100.99.1 is unconstitutionally vague and uncertain. The city responds that the phrase refers only to "entrepreneurs"—that is, to those who risk their capital in exploring for and extracting oil—and that the title applied to, or function discharged by, any particular person is not dispositive of his tax liability under the section. The city maintains that the means by which a person owning the right to drill might choose to exploit that right are so multifarious that no more specific term can be used and that in many cases the relationships among the persons involved in producing oil from a given well are so complicated that the city itself does not attempt to determine who is the actual producer, but leaves the parties to resolve the question among themselves, usually by contract. That the section does not on its face refer to each of the possible means by which oil may be produced does not, in the city's view, render it uncertain.

Although the city's entrepreneur argument has overtones of the "I know it when I see it" approach (see the concurring opinion of Mr. Justice Stewart in *Jacobellis* v. *Ohio* (1964) 378 U.S. 184 [12 L.Ed.2d 793, 84 S.Ct. 1676]), we find the argument persuasive. It is significant that no plaintiff asserts that it did not function as a producer of oil or that it was taxed for oil which it did not produce. Instead, the difficulties the plaintiffs purport to have with the ordinance are strictly hypothetical, suggesting either that those for whom the alleged uncertainty of the ordinance might have posed some problem have settled any questions by contract or that the meaning of the ordinance is sufficiently clear to enable them to determine whether they are liable for the tax.

In asserting that there is uncertainty in the computation of the tax, plaintiffs point to the fact that there is nothing in the ordinance which prevents the city from imposing the full measure of the tax upon each of several joint producers, there being no language requiring it to be prorated among them. The argument is not that double taxation has occurred

but rather that it might occur. We reject this argument; if plaintiffs ever suffer the misapplication of the ordinance, they may then complain.

■ The suggestion that the provisions of section 6100.99.2 render uncertain the administration of section 6100.99.1 is related to plaintiffs' contention that, since section 6100.99.2 is both invalid and inseparable from section 6100.99.1, it pulls the latter down with it. The uncertainty purported to be created by section 6100.99.2 arises from an alleged conflict between that portion of section 6100.99.1 which requires the city to pay the business license tax when it acts as a unit operator and that part of section 6100.99.2 which requires both the city and its operating contractor to pay portions of the tax.

Plaintiffs and the courts below interpret the term "pay" in section 6100.99.1 to mean not only "make payment" but also "bear the burden of the tax." As so construed, the term "pay" in section 6100.99.1 is clearly in conflict with that part of section 6100.99.2 which apportions the burden of the tax between the operating contractor and the city, and the administration of section 6100.99.1 is concededly uncertain. But in urging this interpretation plaintiffs seek a construction which renders 6100.99.1 invalid when there also exists a construction which does not call into question its validity. (See *Warner* v. *Kenny* (1946) 27 Cal.2d 627 [165 P.2d 889]; see also Civ. Code, § 3541.) If the term "pay" in section 6100.99.1 is limited to mean "make payment," the section is fully consistent with its companion section. Furthermore, when so read, section 6100.99.1 requires what has in fact occurred since the section became effective and what, therefore, must have been intended by its authors. As the recital of the facts reveals, the city does not bear the full measure of the tax levied upon the oil produced from the tidelands. Rather, under a contract long antedating the ordinance involved here, the city's drilling and operating contractor bears a portion of the tax. An analogous situation exists with respect to private producers who, although themselves charged with the responsibility for paying the tax, have contractually shifted part of the burden to various other persons who are involved with them in the production of oil.

■ Plaintiffs' second argument stresses disparities in the sums paid by the respective oil producers. They maintain that these disparities result from a lack of uniformity in the operation of the tax and that, in failing to take into account differing royalty burdens, schemes of operation, patterns of ownership of the oil produced, and contractual allocations of tax burdens, the ordinance discriminates among the persons subject to the tax. However, the disparities result not from any differences in treatment

written into the ordinance or implicit in its provisions, but rather from differences in the situations in which the various oil producers find themselves. The fact is the ordinance operates identically with respect to persons identically situated. Since the ordinance clearly does not levy an ad valorem tax (see *McAdams Oil Co.* v. *Los Angeles* (1939) 32 Cal.App.2d 359 [89 P.2d 729]), we do not reach plaintiffs' argument in that regard.

■ We likewise reject plaintiff's third argument. While the 300-barrel exemption undeniably creates two classes of producers (those who produce some oil from wells which yield less than 300 barrels quarterly and those who produce no oil from such wells) and while those classes are treated differently, the differentiation has two rational bases; namely, it serves to encourage the marginal producer to remain in operation and it saves the city the trouble of administering the tax in cases where the cost of administration would exceed the tax yield.

■ The suggestion that plaintiff Union Pacific Railroad Company is taxed at a higher rate than other "mercantile, manufacturing and business corporations doing business within the State," in violation of article XIII, section 14, of the California Constitution, is patently incorrect. The cited provision would apply if Union Pacific, acting in its capacity as a public utility, were subjected to a municipal tax directed solely at it (see *City of Oceanside* v. *Pacific Tel. & Tel. Co.* (1955) 134 Cal.App.2d 361 [285 P.2d 704]), but here the railroad acts in a different capacity and is subjected to a tax by reason of that distinct activity. Further, other parties engaged in that activity are taxed in an identical manner.

The fourth contention raised by plaintiffs also lacks merit. Whether or not sections 6100.99.1 and 6100.99.2 are severable is immaterial, for we think section 6100.99.2 is valid.

### DEFENDANTS' APPEAL

■ The city's appeal from that portion of the judgment awarding L.B.O.D. the amount it had paid in taxes under section 6100.99.1 and declaring section 6100.99.2 unconstitutional presents two issues. The first is whether section 6100.99.2 is in fact invalid and the second is whether the contract between L.B.O.D. and the city authorizes the sharing of the business license tax.

The first paragraph of section 6100.99.2 is said by plaintiffs to be uncertain because it conflicts with section 6100.99.1. However, this alleged conflict has been resolved above. Plaintiffs also suggest that since under the first paragraph the proportion of the tax burden to be borne by L.B.O.D.

is fixed by contract, there has been an impermissible delegation of legislative authority. But the first paragraph merely recognizes what the parties were free to do in any event and what they had in fact already done, and it therefore delegates no power whatever.

■ Plaintiffs maintain that the second paragraph of section 6100.99.2 also improperly delegates legislative authority because it permits the city auditor to exercise his unguided judgment in determining the portion of the total production attributable under the unit agreements to each producer and thus to determine both the total amount of tax to be collected and the amount to be paid by each producer. Plaintiffs' argument is that, in order to make these determinations, the auditor must construe various unit operating agreements and the ordinance itself, and they do not supply the necessary guidelines to prevent arbitrary action by the auditor. But the exercise of administrative judgment within the limits imposed here, involving as it does essentially mechanical accounting operations, does not invade the policy-making functions of the city council. (See *The Housing Authority* v. *Dockweiler* (1939) 14 Cal.2d 437 [94 P.2d 794].)

Plaintiffs also maintain that the second paragraph of section 6100.99.2 levies a tax for non-municipal purposes. They seem to argue either that levying a tax on tidelands oil and then replacing the revenue in the tidelands trust fund still is the levy of a tax; or that exempting the tidelands trust fund from payment of the tax and taxing other producers more to offset the revenues lost through the exemption in effect puts money into the tidelands trust fund at the expense of other municipal taxpayers. What this contention ignores is that no tax is levied by section 6100.99.2, which simply insulates the tidelands trust fund from the effect of the tax.

■ Plaintiffs lastly assert that in specifying into which fund tax monies from the city's share of tidelands oil production are to be placed, section 6100.99.2 in effect amends the city charter provision which vests exclusive control and management of the city's harbor department, and thus of the tidelands, in the board of harbor commissioners. Such an implied amendment, they argue, lies beyond the lawful powers of the city council. We think, however, that disposition of tax revenues is within the scope of the city's undeniable right to tax, and if the city's disposition of revenues involved herein impinges upon the activities of the board of harbor commissioners, it does so only indirectly and without interfering with the independence of the board.

■ Several provisions of the operating contract between the city and L.B.O.D. are material in the resolution of the second issue presented by

the city's appeal. The first, section 35, provides that "in the event any license, severance, production or other tax on oil, gas or other hydrocarbons produced hereunder, shall be levied by any governmental authority, [L.B.O.D.] shall pay the same; provided, however that [L.B.O.D.] shall not be required to pay any of the same in excess of the proportion that the percentage of the proceeds payable to [L.B.O.D.] as its compensation hereunder bears to the total proceeds derived from the sale of all of said oil, gas and other hydrocarbons . . . ."

The second, section 27.1, provides that the city will "reimburse [L.B. O.D.] for the full amount of reasonable and necessary costs actually incurred or expended by [L.B.O.D.] in the performance of its obligations."

A third, section 27.4, provides that L.B.O.D. is not entitled to reimbursement on account of "taxes . . . which may be lawfully . . . levied . . . against [L.B.O.D.] or which [L.B.O.D.] may be required to pay, upon, or on account of, or measured by the consideration to be paid to [L.B.O.D. under the contract], whether the same be in the nature of property taxes, income taxes, gross receipt taxes or otherwise, except that [L.B.O.D.] shall be reimbursed in full for any taxes . . . which [L.B. O.D.], as a result of the commitment of any portion . . . of Subject Lands to a Unit Agreement, is required to pay, and which said taxes . . . [L.B.O.D.] was not, prior to such utilization, required to pay."

Plaintiffs argue, and the court below agreed, that the tax imposed by section 6100.99.1 is not, as applied to the city when it acts as a unit operator, levied upon the business of producing oil. On this basis they argue that the tax does not come within the language of section 35 of the operating contract. We cannot accept this view. The word "including," which links the reference to the city in section 6100.99.1 to the phrase "every person conducting, managing or carrying on the business of producing oil," clearly reveals that the city is a member of the taxed class.

Alternatively, plaintiffs argue that, even if section 35 does not require sharing of the tax, section 27.1 requires and section 27.4 does not prohibit reimbursement by the city. This argument fails, however, because section 27.1 speaks generally of costs while section 35 speaks specifically of taxes. We do not find it significant that section 27.4 omits reference to the tax here involved since it is specific as to the kind of tax (essentially income tax) not to be reimbursed by the city without purporting to state a rule regarding reimbursement for all taxes.

With respect to the money award to L.B.O.D., the judgment is reversed.

With respect to the invalidity of section 6100.99.2 of the Long Beach Municipal Code, the judgment is reversed. With respect to the determination on all other counts that the plaintiffs are entitled to take nothing by their complaint, the judgment is affirmed. Each party shall pay its own costs.

Wood, P. J., and Thompson, J., concurred.

A petition for a rehearing was denied April 24, 1972, and on April 14, 1972, the judgment was modified to read as printed above. The petition of the plaintiffs and appellants for a hearing by the Supreme Court was denied June 7, 1972.