[Civ. No. 4883. Fourth Dist. July 13, 1955.]

THE CITY OF OCEANSIDE, Plaintiff and Appellant, v. THE PACIFIC TELEPHONE AND TELEGRAPH COMPANY (a Corporation), Defendant and Appellant.

James A. Moore for Plaintiff and Appellant.

John A. Sutro, Noble K. Gregory, Pillsbury, Madison & Sutro, Leslie C. Tupper, Lawler, Felix & Hall and Gray, Cary, Ames & Frye for Defendant and Appellant.

MUSSELL, J.—This is an action brought by the city of Oceanside, a city of the sixth class, to collect from the defendant, hereinafter referred to as the "Telephone Company," municipal license taxes alleged to be due from the defendant for the first three quarters of the year 1953 pursuant to the terms of ordinance No. 741, as amended, of said city.

This ordinance provides for the levy of two license taxes on telephone companies (1) A tax of $400 a year (at the rate of $100 per quarter); and (2) A tax of $2.00 a year (50 cents per quarter) for each pay telephone located within the city. The telephone company refused to pay either of these taxes on the ground that both violate the provisions of article XIII, section 14, of the Constitution of the State of California and refused to pay the special tax of $2.00 per year for each pay telephone for the further reason that such telephones are instrumentalities of interstate and foreign commerce and such a tax constitutes an unlawful burden upon interstate commerce in violation of article I, section 8, of the Constitution of the United States.

The trial court found that the tax of 50 cents a quarter ($2.00 a year) for each pay telephone located within the city of Oceanside would constitute a burden on interstate commerce, and further found:

"9. The business license tax of $100 a quarter ($400 a year) upon telephone companies provided for by section 29 of Ordi-

nance No. 741 of The City of Oceanside is a higher rate than, and in a manner and form different from, the business license tax levied by The City of Oceanside under Ordinance No. 741, as amended, upon and collected from mercantile, manufacturing and business corporations doing business within the State of California, but the evidence fails to show that The City of Oceanside did not have any reasonable basis for classifying telephone companies for business license tax purposes in a different category from mercantile, manufacturing and other business corporations.''

Judgment was rendered in favor of the city for $300. ($100 for each of the first three quarters of 1953.) The telephone company appeals from the judgment and the city appeals from ''that part of the judgment'' denying recovery of the tax levied on pay telephones.

The issues on the appeal by the telephone company relate to the application of section 14 of article XIII of the state Constitution. The first paragraph of this section provides, among other things, that all property, other than franchises, owned by telegraph and telephone companies shall be assessed annually by the State Board of Equalization, at the actual value of such property. The second paragraph provides that all property so assessed by said board shall be subject to taxation to the same extent and in the same manner as other property, and the third paragraph is as follows:

''All companies herein mentioned and their franchises, other than insurance companies and their franchises, shall be taxed in the same manner and at the same rates as mercantile, manufacturing and business corporations and their franchises are taxed pursuant to Section 16 of this article; provided, that nothing herein shall be construed to release any company mentioned in this section from the payment of any amount agreed to be paid or required by law to be paid for any special privilege or franchise granted by any political subdivision or municipality of this State; provided further, that no excise, or income tax or any other form of tax or license charge shall be levied or assessed upon or collected from the companies, or any of them, mentioned in the first paragraph of this section, in any manner or form, different from, or at a higher rate than that imposed upon or collected from mercantile, manufacturing and business corporations doing business within this State.''

Ordinance No. 741 of said city, as amended, provides for taxation of corporations doing business within the city in three forms: (1) A tax measured by gross receipts; (2) A tax

measured at flat rates; and (3) A tax measured by the number of vehicles used within the city. The first form is applied to most mercantile businesses and it was stipulated that in 1953 most mercantile corporations were taxed by the city under this form of tax based upon their gross receipts in 1952. The remaining mercantile, manufacturing and business corporations doing business within the city were taxed pursuant to either the flat rate form of tax or the wheel tax and such taxes were applied to approximately 61 such mercantile, manufacturing and business corporations. The gas, electric and telegraph companies were taxed under the flat rate provision. In 1953 the city levied upon and collected from gas and electric corporations a business license tax of $100 a quarter and from a telegraph corporation a business license tax of $7.00 per quarter. In the same year the city sought to collect from the telephone company a business license tax of $400 a year, plus $2.00 a year for each pay telephone.

There was susbtantial evidence supporting the trial court's finding that the gross receipts of the telephone company from the intrastate business done within the city during the year 1952 were approximately $380,238. Applying the schedule of rates set forth in section 9 of ordinance 763, amending ordinance 741, we find that the tax on the defendant company would have amounted to an annual license fee of $185 instead of the $400 yearly tax sought to be collected.

The total annual license tax collected from all but two of the mercantile, manufacturing and business corporations, taxed under the flat rate provision of the ordinance, was less than the basic $400 a year tax that the ordinance purports to impose on telephone companies. The two exceptions noted were a trailer park and an amusement company. The trailer park was taxed at the rate of 50 cents per trailer space per quarter and apparently the amusement company was taxed in various amounts for games and rides. The total amount of the annual license tax collected by the city from these two corporations was less than the sum per year (approximately $754) which the city sought to collect from the telephone company. The highest total annual tax collected in 1953 under the wheel tax provisions of the ordinance was the sum of $176 and no corporation taxed under that provision of the ordinance paid a tax in 1953 equivalent in either rate or total amount to the basic $400 a year tax attempted to be imposed on the defendant corporation.

The city apparently admits that the tax sought to be imposed on defendant was different from and at a rate higher

than that imposed upon or collected from mercantile, manufacturing and business corporations within the city but contends that there was no finding that the license fee was at a higher rate either in a manner or form different from that imposed upon or collected from mercantile, manufacturing and business corporations doing business elsewhere in the state. There is no merit in this contention. It seems quite clear that the plain and unambiguous wording of the latter portion of paragraph three of section 14 of article XIII of the state Constitution permits no such construction. Obviously the Constitution refers to taxes to be imposed by the city without regard to the rate charged by other municipalities in different parts of the state. The city's contention is that this section should read as follows:

". . . no excise, or income tax or any other form of tax or license charge shall be levied or assessed upon or collected from the companies, or any of them, mentioned in the first paragraph of this section, in any manner or form, different from, or at a higher rate than that imposed upon or collected from [*any*] mercantile, manufacturing and business corporations doing business [*anywhere*] within this State."

To insert the italicized words in the section would defeat the purpose of the prohibition against discriminatory taxation and add a meaning not to be found in the clear wording of the section. We are not at liberty to add provisions to what is declared in definite language. (*People* v. *Campbell*, 138 Cal. 11, 15 [70 P. 918].)

It is contended by the city that section 14 of article XIII of the state Constitution does not provide any limitation whatsoever on the power of municipalities to license utilities. This contention is likewise without merit. In 1910 section 14, as amended, provided for a state gross receipts tax upon public utilities, which tax was "In lieu of all other taxes and licenses, state, county and municipal." This provision not only prohibited the various taxing authorities in this state from taxing the operative property of telephone companies and all other public utilities, but also prohibited them from imposing any form of license tax on such utilities. (*San Francisco* v. *Pacific Tel. & Tel. Co.*, 166 Cal. 244 [135 P. 971]; *Pacific Gas & Elec. Co.* v. *Roberts*, 168 Cal. 420 [143 P. 700].) In 1933 section 14 was again amended and now provides as hereinbefore set forth. The first two paragraphs of this section prevent local taxing authorities from discriminating against public utilities in the taxation of their

properties by providing that such property shall be assessed by the State Board of Equalization and when so assessed shall be subject to taxation "To the same extent and in the same manner as other property." The first clause of the third paragraph of section 14 prevents the state from taxing such utilities and their franchises in a different manner or at a different rate from mercantile, manufacturing and business corporations, and provides that such utilities shall be taxed by the state (pursuant to § 16 of art. XIII) "In the same manner and at the same rates as mercantile, manufacturing and business corporations." The last clause is substantially the same as the provisions contained in the 1910 provisions of section 14. It provides that nothing in section 14 should be construed to release any such utilities from the amounts they have agreed to pay or are required by law to pay for any special privilege or franchise granted by any political subdivision or municipality. The last clause in paragraph 3 of section 14 provides that "*No* excise, or income tax or any other form of tax or license charge shall be levied or assessed upon or collected from the companies, or any of them, mentioned in the first paragraph of this section, in any manner or form, different from, or at a higher rate than that imposed upon or collected from mercantile, manufacturing and business corporations doing business within this State." (Italics ours.) The phrase "No . . . tax or . . . charge" clearly indicates that the prohibition therein set forth is applicable to taxes imposed by all taxing authorities, including the city of Oceanside. ▮ When the entire section is read as a whole it is apparent that the section provides a limitation on the power of municipalities to tax public utilities, such as the defendant herein.

While the trial court found that the license tax levied by the city against the telephone company was at a higher rate and in a manner and form different from the tax levied upon mercantile, manufacturing and business corporations doing business within the state, and this finding is supported by the evidence, the court further found that the telephone company had failed to show that the city of Oceanside did not have any reasonable basis for classifying telephone companies for business license tax purposes in a different category from mercantile, manufacturing and business corporations. ▮ It was not necessary for the telephone company to show that the city did not have any reasonable basis for classifying it in a different category from mercantile, manu-

facturing and business corporations since the city is prohibited by the provisions of section 14, article XIII of the state Constitution from taxing telephone companies in a manner and form different from or at a higher rate than that imposed or collected from mercantile, manufacturing and business corporations doing business in the state.

The city, in its appeal from that portion of the judgment which determined that it could not recover its special business license tax of $2.00 a year (50 cents a quarter) for each pay telephone within the city, contends that the said tax does not constitute a burden on interstate commerce within the meaning of the Constitution of the United States (art. I, § 8, cl. 3). In this connection the trial court found that "14. A tax of 50 cents a quarter ($2 a year) for each pay telephone located within The City of Oceanside would constitute a burden on interstate commerce," and concluded that "4. In so far as Ordinance No. 741 of The City of Oceanside provides for a tax of 50 cents for each pay telephone located within said City, said ordinance violates Article I, section 8, clause 3, of the Constitution of the United States." This finding and conclusion are supported by the record. The defendant telephone company is a corporation engaged in rendering a local, statewide and interstate communication service within the states of California, Oregon and Washington and the northern part of Idaho. By connecting with other telephone companies, it provides communication service throughout the United States and other parts of the world. As a part of this service it maintains pay telephones within the city of Oceanside which are used in making telephone calls from the city to telephones located outside of the State of California. These pay telephones may be connected with over 80 million telephones throughout the world. The use of such pay telephones for interstate commerce is substantial. From February 21, 1952, to January 20, 1954, there were 9,212 telephone calls from such pay stations to telephones outside of the state of California and 283 calls went to points outside of the United States. In this connection the trial court found:

"12. The same telephone instruments, the same signaling apparatus, the same wires, lands, buildings, central office equipment and operative organization of The Pacific Telephone and Telegraph Company within The City of Oceanside are used in providing interstate toll telephone service from pay telephones located within said City as are used in pro-

viding intrastate toll telephone service from said pay telephones.

"13. It would not be practicable or feasible for The Pacific Telephone and Telegraph Company to provide separate systems for intrastate and interstate telephone service from pay telephones within The City of Oceanside. The Pacific Telephone and Telegraph Company could not discontinue intrastate telephone service from pay telephones in The City of Oceanside without also discontinuing interstate telephone service from the same telephones."

In this connection it is conceded by the city in its opening brief that "The intrastate business of the defendant in the City of Oceanside cannot be discontinued without discontinuing the interstate business also; nor can the defendant provide separate pay telephones for intrastate and interstate use."

In *Cooney* v. *Mountain States Tel. & Tel. Co.*, 294 U.S. 384 [55 S.Ct. 477, 79 L.Ed. 934], the telephone and telegraph company brought suit to restrain the enforcement of two acts of the Legislature of Montana imposing annual license taxes. The acts prescribed a tax to be paid for each telephone instrument used in the conduct of the business of operating and maintaining telephone lines and furnishing telephone service in the State of Montana. Plaintiff was a Colorado corporation operating a statewide telephone system in Montana. There, as here, the company furnished telephone services of a interstate and intrastate character and its system extended throughout several states. Its telephone instruments in Montana were an integral part of its system and were a part of a still greater system extending throughout the United States and to many foreign countries. All of its telephones were instrumentalities of interstate and foreign commerce and plaintiff could not discontinue its intrastate business and operations in Montana without virtually destroying and being compelled to abandon and withdraw from its interstate and foreign business. The court there held:

"There is no question that the state may require payment of an occupation tax from one engaged in both intrastate and interstate commerce. But a state cannot tax interstate commerce; it cannot lay a tax upon the business which constitutes such commerce or the privilege of engaging in it. And a fact that a portion of a business is intrastate and therefore taxable does not justify a tax either upon the interstate business or upon the whole business without discrimination.

*Leloup* v. *Port of Mobile,* 127 U.S. 640 [8 S.Ct. 1380, 32 L.Ed. 311]. There are 'sufficient modes' in which the local business may be taxed without the imposition of a tax 'which covers the entire operations.' Id., page 647 of 127 U.S., 8 S.Ct. 1380, 1383. See *Williams* v. *Talladega,* 226 U.S. 404, 419 [33 S.Ct. 116, 57 L.Ed. 275]. Where the tax is exacted from one doing both an interstate and intrastate business, it must appear that it is imposed solely on account of the latter; that the amount exacted is not increased because of the interstate business done; that one engaged exclusively in interstate commerce would not be subject to the tax; and that the one who is taxed could discontinue the intrastate business without also withdrawing from the interstate business. *Sprout* v. *South Bend, Inc.,* 277 U.S. 163, 171 [48 S.Ct. 502, 77 L.Ed. 833, 62 A.L.R. 45]; *East Ohio Gas Co.* v. *Tax Commission,* 283 U.S. 465, 470 [51 S.Ct. 499, 75 L.Ed. 1171]."

The city contends that the Cooney case is distinguishable from the instant case in that the Montana license tax was levied for the privilege of doing joint interstate and intrastate business, whereas the Oceanside ordinance is so worded that the levy is for the privilege of doing intrastate business (citing *Pacific Tel. & Tel. Co.* v. *Tax Commission,* 297 U.S. 403, 414 [56 S.Ct. 522, 80 L.Ed. 760, 105 A.L.R. 1]), where the court said: "Although the two branches of the business of the companies are inseparable, the tax is not laid inseparable upon both. Thus it is not open to the objection held fatal in *Leloup* v. *Port of Mobile,* 127 U.S. 640 [8 S.Ct. 1380, 32 L.Ed. 311], and *Cooney* v. *Mountain States Tel. & Tel. Co.,* 294 U.S. 384 [55 S.Ct. 477, 79 L.Ed. 934]." However, in the *Pacific Telephone Company* v. *Tax Commission* tax case the court distinguished the Cooney case on the ground that it involved a flat-rate tax measured by an instrumentality used in both interstate and intrastate commerce, whereas the tax involved in the *Pacific Telephone Company* v. *Tax Commission* case was measured solely by gross receipts from intrastate (as distinguished from interstate) business and held that a tax on the privilege of engaging in intrastate business measured solely by gross receipts from such intrastate business would not necessarily burden interstate commerce.

The fact that the city ordinance her involved states that the special tax measured by pay telephones does not include any business done to and from points without the State of California and that no license levied by the city shall be

presumed to apply to interstate commerce does not avoid the effect of the tax. In the instant case, as in the Cooney case, the tax, being indivisible and indiscriminate in its application, necessarily burdens interstate commerce. It is not laid on revenue derived from local service as distinguished from interstate service, and is not imposed with respect either to the nature of the revenue, to the character of the service, or to the manner in which charges for the service are fixed.

In the recent case of *Michigan-Wisconsin Pipe Line Co.* v. *Calvert* (1954), 347 U.S. 157, 166 [74 S.Ct. 396, 98 L.Ed. 583], the court held: "It is now well settled that a tax imposed on a local activity related to interstate commerce is valid if, and only if, the local activity is not such an integral part of the interstate process, the flow of commerce, that it cannot realistically be separated from it."

■ The record shows that the city's business license tax ordinance, by imposing the special tax on pay telephones, violates section 14 of article XIII of the state Constitution in that the telephone company is required to pay two license taxes on its privilege of engaging in business in the city of Oceanside, while only one business tax is imposed on mercantile, manufacturing and business corporations.

The judgment rendered in favor of the city is reversed and that part of the judgment denying recovery of the tax levied on pay telephones is affirmed. Each party to pay its own costs on appeal.

Barnard, P. J., and Griffin, J., concurred.