[Civ. No. 45487. First Dist., Div. Three. June 26, 1981.]

CITY OF LIVERMORE, Plaintiff and Appellant, v.
PACIFIC GAS AND ELECTRIC COMPANY, Defendant and
Respondent.

COUNSEL

Gary B. Reiners, and Thomas R. Curry, City Attorneys, and Mollie J. Dent, Assistant City Attorney, for Plaintiff and Appellant.

John C. Morrissey, Joseph I. Kelly, Patrick G. Golden and Robert Ohlback for Defendant and Respondent.

OPINION

**SCOTT, Acting P. J.**—The issue presented here is the constitutionality of the City of Livermore's business license tax as applied to respondent

Pacific Gas and Electric Company (P.G. & E.). This appeal follows the granting of summary judgment on behalf of P.G. & E. declaring section 12.23.9 of the Livermore City Code as unconstitutional in contravention of article XIII, section 19 of the California Constitution.

Article XIII, section 19 of the California Constitution provides in pertinent part: "No ... tax or license charge may be imposed on [companies transmitting or selling gas or electricity] which differs from that imposed on mercantile, manufacturing, and other business corporations." The Livermore City Ordinance which P.G. & E. contends runs afoul of this constitutional amendment is a part of the business license scheme of the city. Livermore imposes one of three types of taxes on all businesses located in the city: a gross receipts tax, a flat rate tax, and a gross expense tax. The flat rate tax applies to businesses without a fixed location, such as carnivals, and the gross expense tax is imposed on businesses having administrative headquarters inside Livermore which have minimal gross receipts but substantial expenses. The gross receipts tax under which provisions P.G. & E. is taxed is imposed on a variety of fixed location businesses divided into subclasses which include: 1) money-lending institutions which are taxed at $2.40 per $1,000 gross receipts; 2) persons engaged in residential and commercial rentals who are taxed at $1.20 per $1,000 gross receipts; 3) water companies which are taxed at 1 percent of their annual gross receipts (which is approximately $1.00 per $1,000 gross receipts); 4) most other businesses including wholesale and retail sellers, manufacturers, and utility services (including P.G. & E.) which are taxed at 80 cents per $1,000 gross receipts; and 5) grocery stores and motor vehicle dealers which are taxed at 50 cents per $1,000 gross receipts.

The essence of P.G. & E.'s contention is that the 80-cent rate it pays is greater than the 50-cent rate paid by grocers and automobile dealers, and thus violates the provisions of article XIII, section 19 of the California Constitution because it "differs from that imposed on mercantile, manufacturing, and other business corporations."

Since its adoption in the 1974 general election, section 19 has not been interpreted in any reported decision. However, its predecessor former section 14[1] of article XIII was interpreted in *City of Oceanside* v.

---

[1]Former section 14 provides in pertinent part: "All companies [engaged in the transmission or sale of gas or electricity], and their franchises, shall be taxed in the same manner and at the same rates as mercantile, manufacturing and business corporations and their franchises are taxed ...; provided further, that no excise, or income tax or

*Pacific Tel. & Tel. Co.* (1955) 134 Cal.App.2d 361 [285 P.2d 704], where the court considered the validity of a business tax ordinance as applied to the telephone company. The ordinance provided three forms of taxation: 1) a tax measured by gross receipts; 2) a flat rate tax; and 3) a tax measured by the number of vehicles used within the city. Most of the mercantile businesses were taxed pursuant to the first method; the remaining mercantile, manufacturing, and business corporations were taxed pursuant to either the flat rate method or the vehicle tax. The gas, electric, and telegraph companies were taxed pursuant to the flat rate method. (*Id.*, at pp. 363-364.)

Pursuant to the ordinance, the city attempted to impose an annual flat rate tax of $400 on the telephone company. The court, however, found that if the company were taxed on its gross receipts its annual business tax would have been $185 rather than the $400 sought to be collected, and that only two of all the mercantile, manufacturing, and business corporations taxed under the flat rate method paid more than the $400 annual tax which the city tried to impose on the telephone company. (*Id.*, at p. 364.) The court then reviewed the history of section 14 and found that from 1910 to 1933 public utilities were subject only to a state imposed tax measured by gross receipts, such tax to be "'[i]n lieu of all other taxes and licenses, state, county, and municipal.'" (*Id.*, at p. 365.) In 1933 section 14 was amended to authorize the taxation of public utilities by local authorities.[2] The court examined the new provision in detail and concluded that section 14, when read as a whole, limited the new taxing power of local authorities; however, the court did not find it necessary to determine the extent of the limitation. (*Id.*, at pp. 365-366.)

In determining the proper construction to be given section 19 we are mindful that constitutional provisions should be given a liberal, practical construction, disregarding the literal language to avoid absurd results and to achieve the real purpose of their enactment. (See *Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 245 [149 Cal.Rptr. 239, 583 P.2d 1281].)

---

any other form of tax or license charge shall be levied or assessed upon or collected from the companies, or any of them, . . . in any manner or form, different from, or at a higher rate than that imposed upon or collected from mercantile, manufacturing and business corporations doing business within this State."

[2]See footnote 1, *ante*. Section 14 remained unchanged up to the time of the *Oceanside* decision.

P.G. & E. does not contend that the tax is unconstitutional because it is less than that which some other businesses pay, recognizing that the purpose of the constitutional provision is to prohibit the imposition of a greater tax burden upon P.G. & E. than that imposed upon other businesses, and not the imposition of a lesser tax. P.G. & E. instead argues that to permit the grocers and automobile dealers to be taxed at a lower rate has the effect of modifying section 19 to read that no tax may be imposed upon P.G. & E. which differs from that imposed on *most* mercantile, manufacturing, and other business corporations; such a construction requires insertion of the word "most," which adds a provision to what is otherwise definite language. (See *City of Oceanside, supra*, at p. 365.) P.G. & E. would have us construe the limiting language of section 19 at least to require that the tax burden imposed on the utility be no greater than the *lowest* tax burden imposed on any mercantile, manufacturing, or other business corporation. This construction would allow local authorities both to classify businesses for tax purposes and to impose a tax on a utility (see *Clark* v. *City of San Pablo* (1969) 270 Cal.App.2d 121, 126 [75 Cal.Rptr. 726]), as well as recognize that the 1933 amendment to former section 14 implicitly authorized the taxation of utilities by local authorities which was theretofore prohibited. (See *City of Oceanside, supra*, at pp. 365-366.) However, P.G. & E.'s argument has the effect of inserting the word "any" in the language of the section to read that no tax can be imposed on P.G. & E. which differs from that imposed on *any* mercantile, manufacturing, and other business corporations; this does not help resolve the dispute.

We do not read the section so narrowly as to prohibit the imposition of a lower tax rate on other businesses within the community where a rational basis therefor is demonstrated by the taxing authority. The history of section 19 and its predecessor former section 14, as we have discussed, prohibits municipalities from unfairly extracting excessive taxes from utilities by requiring that they be taxed in conformity with taxes imposed upon other businesses. (See *ibid.*)

Here all mercantile, manufacturing, and business corporations are taxed at the same or higher rate as P.G. & E. except two types of businesses, grocers and automobile dealers. The record indicates that the license tax was directed at taxing the profits of all businesses at a uniform rate and that the city found those two businesses to have significantly lower profit margins, thereby necessitating, in fairness, a rate differential.

No contention is made that P.G. & E. is a similar low profit margin business. It is not in fact being subjected to a different or greater tax as there is a demonstrated rational basis for the imposition of a lesser tax rate upon grocers and automobile dealers. Therefore, P.G. & E. is in fact not being taxed differently from other mercantile, manufacturing, and other business corporations within Livermore. We find no constitutional infirmity in its ordinance.

The judgment is reversed with directions for entry of judgment in accordance with the views herein expressed.

Feinberg, J., and Barry-Deal, J., concurred.

A petition for a rehearing was denied July 24, 1981, and respondent's petition for a hearing by the Supreme Court was denied September 16, 1981. Tobriner, J., did not participate therein.