[No. A095373. First Dist., Div. One. Oct. 31, 2002.]

PACIFIC GAS AND ELECTRIC COMPANY, Plaintiff and Respondent,
v.
CITY OF OAKLAND, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part II.

## Counsel

Sheppard, Mullin, Richter & Hampton, Otis McGee, Jr., Robert J. Stumpf, Jr., Raymond Ramsey, John A. Russo, Barbara J. Parker and Bruce W. Plebuch for Defendant and Appellant.

Mark H. Penskar and Elizabeth A. Collier for Plaintiff and Respondent.

## Opinion

**STEIN, J.**—Pacific Gas and Electric Company (PG&E) filed suit against the City of Oakland (Oakland), challenging the constitutionality of Oakland's business tax and seeking a refund of taxes paid. After granting PG&E's motion for summary adjudication, the trial court entered judgment in favor of PG&E, awarding it $1,192,372.39 for excessive taxes paid in 1997 and $1,188,262.28 for excessive taxes paid in 1998. This appeal followed.

We will affirm.

I

*Background*

Prior to 1974, California Constitution, article XIII, section 14, provided that all property owned by government-regulated companies, including companies engaged in the transmission or sale of gas or electricity (public utilities), should be assessed annually by the State Board of Equalization at its actual value. In addition, paragraph 3 of section 14 provided that "no excise, or income tax or any other form of tax or license charge shall be levied or assessed upon or collected from the companies, or any of them, mentioned in the first paragraph of this section, in any manner or form, different from, or at a higher rate than that imposed upon or collected from mercantile, manufacturing and business corporations doing business within this State." The purpose of section 14 was to prevent local taxing authorities from discriminating against public utilities. (*City of Oceanside v. Pacific Tel. & Tel. Co.* (1955) 134 Cal.App.2d 361, 365-366 [285 P.2d 704].)

In 1974, the state's voters adopted Proposition 8, which was designed to revise article XIII to delete obsolete provisions, clarify wording, eliminate excess verbiage and establish a logical order for the article's provisions. Proposition 8 was intended to make only technical changes in the Constitution, and to clarify the meaning of existing sections. (See Ballot Pamp., Gen. Elec. (Nov. 5, 1974) analysis of Prop. 8 by Legislative Analyst, p. 30, and argument in favor of Prop. 8, p. 31.) As part of this process, article XIII, section 14 was repealed, and article XIII, section 19 was enacted. Section 19, like former section 14, requires the State Board of Equalization to assess utilities annually. It also provides that "No other tax or license charge may be imposed on these companies which differs from that imposed on mercantile, manufacturing, and other business corporations." Section 19, as so worded, remains in effect today.

As relevant here, Oakland imposes an annual business tax on entities doing business within its jurisdiction. The tax is comprised of a base fee on a specified amount of gross receipts, plus a percentage of every additional $1,000 of gross receipts or fractional part thereof. For example, manufacturers selling at retail or wholesale, other retail or wholesale sales businesses and automobile dealers, are taxed $60 per year for the first $50,000 of gross receipts, plus $1.20 for each additional $1,000 of gross receipts. (Oakland Mun. Code, §§ 5.04.290, 5.04.310, 5.04.320, and 5.04.390.) Oakland taxes grocers $60 per year for the first $100,000 earned, plus $0.60 for each additional $1,000 of gross receipts. (Oakland Mun. Code, § 5.04.300.) Before 1996, Oakland taxed public utilities $60 per year for the first $60,000 of gross receipts, plus $1 for each additional $1,000 of gross receipts. In 1996, however, Oakland began to tax "electric businesses" $60 for the first $60,000 of gross receipts plus $6 for each additional $1,000 of gross receipts. (Oakland Mun. Code, § 5.04.480.) All other public utilities continue to be taxed at the old rate. (Oakland Mun. Code, § 5.04.460.)

PG&E paid tax at the new rate and, after exhausting its administrative remedies, brought suit against Oakland, challenging the constitutionality of Oakland's tax, claiming that it violates California Constitution article XIII, section 19.

II

*Motion to Dismiss**

*See footnote, *ante*, page 364.

### III

*The Appeal*

*Constitutionality of Oakland's Tax*

**(1a)** Oakland concedes that it taxes PG&E at a rate significantly higher than the rate at which it taxes retail sales businesses, automobile sales businesses, wholesale sales businesses, grocers and "miscellaneous and undefined" businesses. It contends, however, that the rate charged PG&E is permissible because it taxes all electric companies at that rate, it charges even higher rates to businesses that rent commercial and certain residential properties ($13.95 for every $1,000 of gross receipts), and because it uses different formulae to calculate the amount of business tax imposed on other kinds of businesses. (For example, for recreation and entertainment businesses the rate is $60 for the first $13,335 of gross receipts plus $0.45 for each $1,000 of gross receipts in excess of $13,335 (Oakland Mun. Code, §§ 5.04.370, 5.04.420, and 5.04.430).)

California Constitution, article XIII, section 19, however, specifies that the tax imposed on public utilities may not differ from that imposed on *"mercantile, manufacturing,* and other business corporations." (Italics added.) ■ "Constitutional provisions, like statutes, must be read in conformity with their plain language [citation], and in such a manner as to give effect wherever possible to every word. [Citation.]" (*People v. Harris* (1989) 47 Cal.3d 1047, 1082 [255 Cal.Rptr. 352, 767 P.2d 619].) ■ The terms "mercantile" and "manufacturing," therefore, may not simply be ignored. In addition, absent evidence that some other interpretation was intended, the canon of *ejusdem generis* applies. It is presumed that if a term were intended to be used in its unrestricted sense, the provision as a whole would not also offer as examples peculiar things or classes of things since those descriptions would then be surplusage. (*Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 141 [96 Cal.Rptr.2d 485, 999 P.2d 718].) By "other businesses," therefore, section 19 should be read as referring to other businesses in the same class as manufacturing or mercantile businesses, i.e., businesses that, like public utilities, manufacture and sell a product. A tax imposed on a particular kind of public utility—such as a producer of electricity—therefore, is invalid if it differs from that imposed on businesses comparable to mercantile and manufacturing businesses. That Oakland taxes all electric utilities at the same rate, therefore, is irrelevant, as is the possibility that the rate imposed on electric utilities is in some way similar to the rate imposed on businesses that are not comparable to mercantile or manufacturing businesses.

Oakland contends that there is a rational basis for taxing PG&E at a rate higher than that imposed on mercantile, manufacturing and comparable businesses. Citing the deregulation of the electric industry, Oakland claims that the field has been opened to new electric service providers, with the result that competition has been increased and government-implemented limitations on profits for electric service providers have been removed. California Constitution, article XIII, section 19, however, is plainly written, and says nothing about "rational basis." The city's position effectively adds a provision to the section by making the validity of a tax depend not on whether it differs from the tax imposed on other businesses, but on whether it differs from the tax imposed on other businesses *and there is no rational basis for that difference.* ▮ " 'The constitution is to be interpreted by the language in which it is written, and courts are no more at liberty to add provisions to what is therein declared in definite language than they are to disregard any of its express provisions.' [Citations.]" (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 799 [268 Cal.Rptr. 753, 789 P.2d 934].)

▮ An argument similar to Oakland's was rejected by the court in *City of Oceanside v. Pacific Tel. & Tel. Co., supra,* 134 Cal.App.2d 361. Oceanside had imposed a higher tax on telephone companies than it imposed on other businesses. The court held, "It was not necessary for the telephone company to show that the city did not have any reasonable basis for classifying it in a different category from mercantile, manufacturing and business corporations since the city is prohibited by the provisions of section 14, article XIII of the state Constitution from taxing telephone companies in a manner and form different from or at a higher rate than that imposed or collected from mercantile, manufacturing and business corporations doing business in the state." (*Id.* at pp. 366-367.)

Oakland contends that *City of Oceanside* no longer states the law, that the holding in that case conflicts with the more recent case of *City of Livermore v. Pacific Gas & Electric Co.* (1981) 120 Cal.App.3d 1001 [175 Cal.Rptr. 100] and that the reasoning in *City of Livermore* should be followed here. It is true that *City of Oceanside* was concerned with California Constitution, former article XIII, section 14. It is not true, however, that the opinion in that case therefore offers little, if any, guidance as to the meaning of article XIII, section 19. As noted above, the revisions to article XIII resulting in the repeal of former section 14 and the addition of the new section 19 were intended to make only technical changes in the Constitution and to clarify the meaning of existing sections. The holding of the court in *City of Oceanside,* therefore, remains viable.

Moreover, *City of Oceanside* and *City of Livermore* are not inconsistent. In *City of Livermore,* PG&E was subjected to taxes comparable to those imposed on a variety of businesses, including water companies, wholesale and

retail sellers, manufacturers, other utility companies and most other businesses. Grocers and automotive dealers, however, were charged a lower rate. PG&E argued, in essence, that under California Constitution, article XIII, section 19, it could be taxed at a rate no greater than the *lowest* tax rate imposed on any mercantile, manufacturing or other business corporation. In rejecting this argument, the court held: "We do not read the section so narrowly as to prohibit the imposition of a lower tax rate on other businesses within the community where a rational basis therefor is demonstrated by the taxing authority. The history of section 19 and its predecessor former section 14 . . . prohibits municipalities from unfairly extracting excessive taxes from utilities by requiring that they be taxed in conformity with taxes imposed upon other businesses. [Citation.] [¶] Here all mercantile, manufacturing, and business corporations are taxed at the same or higher rate as P.G. & E., except two types of businesses, grocers and automobile dealers. The record indicates that the license tax was directed at taxing the profits of all businesses at a uniform rate and that the city found those two businesses to have significantly lower profit margins, thereby necessitating, in fairness, a rate differential. [¶] No contention is made that P.G. & E. is a similar low profit margin business. It is not in fact being subjected to a different or greater tax as there is a demonstrated rational basis for the imposition of a lesser tax rate upon grocers and automobile dealers. Therefore, P.G. & E. is in fact not being taxed differently from other mercantile, manufacturing, and other business corporations within Livermore." (*City of Livermore v. Pacific Gas & Electric Co., supra,* 120 Cal.App.3d at pp. 1005-1006 (*City of Livermore*).)

*City of Oceanside* holds that a public utility need not show the absence of a rational basis for a special tax rate imposed on it in order to prove that the tax violates the constitution. *City of Livermore, supra,* 120 Cal.App.3d 1001, recognizes only that it may be appropriate to impose a special rate on some mercantile or manufacturing businesses, and a public utility that seeks a comparable rate must establish that it is entitled to it; i.e., that its business is comparable to those taxed at the special rate. We do not read *City of Livermore* as standing for the proposition that a taxing authority can create a special category for public utilities simply because it has a rational basis for doing so, and we therefore do not read it as authority for allowing Oakland to tax electric utilities at a rate greater than the rate imposed on *all* other mercantile, manufacturing and comparable businesses. ·

In addition, both *City of Oceanside* and *City of Livermore* recognize that the burden of showing that a public utility is in a special category falls on the party seeking to prove that the public utility is in fact in the special category. Therefore, even if it is assumed for the sake of argument that Oakland is entitled to tax electric utilities at a special rate if a rational basis for the

special rate exists, Oakland could prevail only by submitting evidence tending to show the existence of such a rational basis. (Code Civ. Proc., § 437c, subd. (*o*)(1); *Crouse v. Brobeck, Phleger & Harrison* (1998) 67 Cal.App.4th 1509, 1524 [80 Cal.Rptr.2d 94].)

Oakland asserted in the trial court that the deregulation of the electrical energy market creates increased competition and allows new vendors to enter into the market. On appeal, it argues, further, that deregulation will increase the profitability of electric service providers. Oakland, however, submitted no evidence to support these assertions, and did not explain how they might provide a rational basis for the tax it imposes on electric utilities. ■ "A party cannot avoid summary judgment based on mere speculation and conjecture [citation], but instead must produce admissible evidence raising a triable issue of fact. [Citation.]" (*Crouse v. Brobeck, Phleger & Harrison, supra,* 67 Cal.App.4th at p. 1524.)

■ Finally, Oakland contends that the proper focus should be on the total tax burden imposed on PG&E, of which the business tax is only a part. Oakland claims that the burden, therefore, was on PG&E to produce evidence to show that its total tax burden differs from the total tax burden shouldered by other businesses. Oakland's contention is inconsistent with the holding in *City of Oceanside.* It also is inconsistent with the language of California Constitution, article XIII, section 19: "*No . . . tax or license charge* may be imposed [on utilities] which differs from that imposed on mercantile, manufacturing, and other business corporations." (Italics added.) Section 19 does not speak to total tax burden, but to specific licenses or charges.

Cases such as *H.A.S. Loan Service, Inc. v. McColgan* (1943) 21 Cal.2d 518 [133 P.2d 391, 145 A.L.R. 349] and *Security-First Nat. Bk. v. Franchise Tax Bd.* (1961) 55 Cal.2d 407 [11 Cal.Rptr. 289, 359 P.2d 625], have no application here. Those cases involved taxes imposed on national banks pursuant to section 5219 of the Revised Statutes of the United States (12 U.S.C. former § 548). Section 5219 sets forth several methods whereby a state may impose a tax on national banking associations located within its borders. The purpose of the section was to prohibit only those systems of state taxation which discriminate in practical operation against national banking associations or their shareholders as a class. (*Tradesmens Bank v. Tax Comm'n* (1940) 309 U.S. 560, 567 [60 S.Ct. 688, 692, 84 L.Ed. 947].) One permitted method was to tax national banks " 'according to or measured by their net income.' " (*Security-First Nat. Bk. v. Franchise Tax Bd., supra,* 55 Cal.2d at p. 414.) The states are permitted to include the " 'entire net income received from all sources,' " but may not tax the national banks at a rate " 'higher than the highest of the rates assessed by the taxing state upon

mercantile, manufacturing and business corporations doing business within [the state's] limits.'" (*Ibid.*) The cases have established that in determining whether the limitation is violated, a court looks to the entire tax burden of the national banks and the other corporations. In other words, the ultimate question is not how a particular tax is characterized, but whether, under the tax scheme as a whole, the national banks pay a greater percentage of their income in taxes than is paid by other corporations. (See *Security-First Nat. Bk. v. Franchise Tax Bd., supra,* 55 Cal.2d 407.)

Nothing in California Constitution, article XIII, section 19 invites a comparison between the income generated by a corporation and the total tax burden paid by it, and nothing in section 5219 of the Revised Statutes of the United States required that the construction given to it by the courts be imposed on article XIII, section 19 of California's Constitution. Under section 19, each specific tax or license imposed on utilities must not differ from the specific tax or license imposed on mercantile, manufacturing and other comparable businesses corporations. As Oakland's business tax charges PG&E a rate that differs from the rate imposed on mercantile, manufacturing and other, comparable, business corporations, the business tax imposed on PG&E is unconstitutional.

### Conclusion

The judgment is affirmed.

Marchiano, P. J., and Margulies, J., concurred.

Appellant's petition for review by the Supreme Court was denied January 15, 2003. Chin, J., did not participate therein.