Filed 5/29/25

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| PACIFIC BELL TELEPHONE COMPANY et al., | C101678 |
| Plaintiffs and Appellants, | (Super. Ct. No. S-CV-0050925) |
| v. | |
| COUNTY OF PLACER et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Placer County, Trisha J. Hirashima, Judge. Affirmed.

Munger, Tolles & Olson, Benjamin J. Horwich, Gabriel M. Bronshteyn, Ginger D. Anders, Andra Lim, Faye Paul Teller, Kyle Groves; Capitol Law and Policy and Eric J. Miethke for Plaintiffs and Appellants.

Gregory S. Warner and Nataliya Shtevnina, County Counsel, for Defendant and Respondent County of Placer.

1

Under article XIII, section 19 of the California Constitution (article XIII, section 19), property owned by utility companies is assessed at the state level and "shall be subject to taxation to the same extent and in the same manner as other property." Appellants—Pacific Bell Telephone Company, AT&T Mobility LLC, AT&T Corp., Sprint Spectrum, L.P., T-Mobile West LLC, and CenturyLink Communications LLC—are utility companies operating in the state, including in Placer County (County). As utilities, the tax rate for appellants' state-assessed property is calculated under Revenue and Taxation Code[1] section 100, whereas locally-assessed property is taxed under a different formula. Appellants filed a complaint against defendants the County and the Board of Equalization (Board) seeking a refund of taxes, alleging the tax rate imposed on their property is unconstitutionally higher than the rate imposed on other property. The County demurred and the trial court sustained the demurrer.

On appeal, appellants argue article XIII, section 19 requires utility property tax rates to be comparable to the tax rates on other property. Appellants rely on three authorities for their argument: (1) the language and history of article XIII, section 19; (2) the general principle of taxation uniformity under article XIII, section 1 of the state Constitution (article XIII, section 1); and (3) our Supreme Court's opinion in *ITT World Communications, Inc. v. City and County of San Francisco* (1985) 37 Cal.3d 859 (*ITT*). We affirm, concluding appellants have not established the trial court erred because appellants do not present any basis for defining comparability to state a valid claim.

---

[1]     Further undesignated section references are to the Revenue and Taxation Code.

2

FACTUAL AND PROCEDURAL BACKGROUND[2]

Appellants filed the operative complaint in December 2023 asserting causes of action for property tax refund and declaratory relief. The complaint alleges the County subjects appellants' state-assessed property to a higher tax rate than locally-assessed property. Appellants submitted claims to the County seeking a partial refund of property taxes for the difference they have paid in taxes at the higher rate over "locally assessed property in the County, as reflected by the County's average property tax rate." The County denied appellants' claims, exhausting appellants' administrative remedies.

The complaint alleges, "The discriminatory property tax rates applied to [appellants'] state-assessed property violate [article XIII, s]ection 19." Appellants acknowledged an appellate court found otherwise in *County of Santa Clara v. Superior Court* (2023) 87 Cal.App.5th 347 (*Santa Clara*), and this "decision binds the trial court," but asserted they "have a good faith basis for asserting their claims for refund here and on appeal in the Third District Court of Appeal." Thus, the complaint seeks refunds of the "property taxes that were levied and collected by the County in violation of law," and a judicial declaration the County's tax rate on state-assessed property violates the California Constitution.

The County demurred, arguing the complaint fails to state facts sufficient to constitute a cause of action based on *Santa Clara* holding rates imposed are constitutional. Appellants' response to the demurrer acknowledged "that *Santa Clara* is binding on [the trial court] and acknowledge[d] that the [trial court] must sustain the County's demurrer on that basis."

---

[2] Appellants made a request for judicial notice of 22 documents, including documents related to the legislative history of article XIII, section 19; reports and summaries on article XIII, section 19; and briefs filed in other cases. We deny the request because the documents are not relevant to the resolution of this appeal.

The trial court sustained the demurrer without leave to amend and entered judgment.

Appellants appeal.

DISCUSSION

Appellants challenge the trial court sustaining defendants' demurrer. " ' " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . .' [W]hen [the demurrer] is sustained without leave to amend, we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm. [Citations.] The burden of proving such reasonable possibility is squarely on the plaintiff." ' [Citations.] Our review of the legal sufficiency of the complaint is de novo, 'i.e., we exercise our independent judgment about whether the complaint states a cause of action as a matter of law.' " (*Tilbury Constructors, Inc. v. State Comp. Ins. Fund* (2006) 137 Cal.App.4th 466, 471.)

"We presume [the trial court's] ruling is correct, and [appellants] have the burden of showing error on appeal." (*Carmichael v. Café Sevilla of Riverside, Inc.* (2025) 108 Cal.App.5th 292, 297 (*Carmichael*).) Appellants must make sufficient arguments to establish trial court error, "[w]e will not develop [appellants'] argument for them." (*Ibid*.)

We first provide a brief history of unitary taxation before discussing the extent of appellants' challenge and ultimately determine appellants have not carried their burden of establishing error.

I

*Unitary Taxation In California*

From 1910 into the 1930's public utility companies in California were taxed only at the state level through "a special gross receipts 'in lieu' tax levied and collected by the

4

state to support state government." (*ITT*, *supra*, 37 Cal.3d at p. 862.) This became a problem after the Great Depression because: "Local tax rates were believed to be too high, in part because public utility property was not on the local tax rolls; state revenues were believed to be too low, in part because public utility tax rolls could be raised only by a two-thirds vote of the Legislature [citation] and the public utilities possessed sufficient political power to block such tax increases." (*Id*. at p. 863.) Voters consequently adopted a constitutional amendment in 1933 that moved utility taxation to the local rolls through unitary taxation, thus " 'alleviating the local tax burden.' " (*Pacific Bell Telephone Co. v. County of Merced* (2025) 109 Cal.App.5th 844, 854, 862 (*Merced*).)

Article XIII, section 19 is the core of the 1933 constitutional amendments for utility taxation. (Stats. 1933, ch. 63, pp. 3072, 3074; *ITT*, *supra*, 37 Cal.3d at p. 862.)[3] This section now states, in relevant part: "The Board shall annually assess . . . property, except franchises, owned or used by regulated railway, telegraph, or telephone companies, car companies operating on railways in the [s]tate, and companies transmitting or selling gas or electricity. This property shall be subject to taxation to the same extent and in the same manner as other property." (Art. XIII, § 19.) Under article XIII, section 19 and implementing statutes, the Board assesses the entirety of a utility's value as a going concern at the state level as one unit, the Board then sends the local taxing authority "the share of the value of the property as a whole that the Board has determined should equitably be allocated to the jurisdiction," then the "local taxing authority subjects the property so assessed to taxation at the rate fixed in its jurisdiction." (*ITT*, at pp. 863-864.) Unitary tax is an ad valorem tax, which is simply a tax "imposed based on the value of the property." (*Merced*, *supra*, 109 Cal.App.5th at p. 850 & fn. 1.)

_____

[3]     Article XIII, section 19 was originally adopted as article XIII, section 14, but it was renumbered and modified with only technical changes in 1974. (*Pacific Gas & Electric Co. v. City of Oakland* (2002) 103 Cal.App.4th 364, 367.)

Under the unitary tax system at its inception, utility property tax rates were imposed at the "tax rate area" level, defined as " ' "a specific geographic area all of which is within the jurisdiction of the same combination of local agencies and school entities for the current fiscal year." ' " (*Santa Clara*, *supra*, 87 Cal.App.5th at p. 362.) "A county may have hundreds or thousands of [tax rate areas]." (*BNSF Railway Co. v. County of Alameda* (9th Cir. 2021) 7 F.4th 874, 880 (*BNSF*).) And "[t]here was no separate tax rate for unitary property[,] the local taxing jurisdictions applied their own rates," so "[u]nder this system, an individual [utility] assessee had to report in thousands of [tax rate areas]." (*Id*. at p. 881, fn. 5.) In 1986, the Legislature enacted section 100 "in part to address the administrative burden that this tax system created for state-assessed unitary property and entities like the utilities that would receive potentially hundreds or thousands of tax bills from the various tax rate areas within a county, at varying rates." (*Santa Clara*, at p. 363.)

Under section 100, subdivision (a), counties must create "one countywide tax rate area" to assign to all state-assessed property attributed to the county. Section 100, subdivision (b) then provides the tax rate applicable to this property, comprised of an effective 1 percent general levy and a debt service component. (See *BNSF*, *supra*, 7 F.4th at p. 881.) The debt service component for state-assessed property "is calculated as the previous year's unitary debt service rate [citation] multiplied by the percentage change between the two preceding fiscal years in the county's ad valorem debt service *levy* (not rate)." (*Id*. at pp. 881-882.)

The ad valorem property tax rate for locally-assessed property is calculated differently, governed by section 93. This provision also imposes a 1 percent general levy and a debt service component. (Cal. Const. art. XIII A, § 1, subd. (a); § 93; *BNSF*, *supra*, 7 F.4th at p. 880.) But the debt service component here "is the amount needed as a percentage of property values to produce enough revenue to make payments for the interest and principal on all voter-approved bonded indebtedness issued by any of the

6

various local entities." (*BNSF*, at p. 880.)  The difference between sections 100 and 93 debt service components is that for state-assessed property tax, it "is based on the change in absolute dollars of the county's debt service rate, not changes in the percentage that taxpayers are paying." (*BNSF*, at p. 882.)

II

*Appellants Have Not Established The Trial Court Erred In Sustaining The Demurrer*

The differential in tax rates between state-assessed and locally-assessed property is the basis for appellants' complaint.  But the extent of appellants' argument for relief requires some discussion because it is not entirely clear.  The confusion lies in appellants arguing in their briefs tax rates must be the "same," "equal," "uniform," and "comparable."  Appellants argue they seek "refunds that will align their tax burden with other property in [the County]—no better, no worse, just the *same*." (Italics added.)  Appellants also state in their opening brief, "*Equal rates* are at the heart of [article XIII, s]ection 1." (Italics added.)  Elsewhere they use the phrase "comparable" and "comparability," for example stating the question on appeal is "whether [article XIII, s]ection 19 requires rate *comparability*." (Italics added.)  And throughout their briefs appellants emphasize the need for "uniform" rates, arguing, "Uniformity is the bedrock of California's constitutional property tax system."

These words, however, are not all synonymous.  "Equal" and "same" can mean two compared items are identical.  (See Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 422, col. 1 ["equal" can mean "of the same measure" and "identical in mathematical value"]; *id.*, at p. 1099, col. 2 ["same" can mean "resembling in every relevant respect" and is synonymous with identical].)  But "comparable" and "uniform" are not so exacting, they are more akin to "similar" or "consonant." (*Id.*, at p. 252, col. 2, ["comparable" can mean "capable of or suitable for comparison" and is synonymous with similar]; *id.*, at p. 1368, col. 1 ["uniform" can mean "of the same form with others" and is synonymous with consonant].)  Clarifying whether appellants are arguing for identical

7

rates or similar rates is important because they require wholly different analyses. It is clear and obvious when rates are not identical—they are either the exact same or they are not. But similarity is a scale—rates can be far removed from identical but still be similar depending on how similarity is defined. In short, identical rates are always similar, but similar rates are not necessarily identical.

Clear delineation of appellants' argument is also important because *Santa Clara*, the case relied on by the parties and the trial court for the demurrer, analyzed only whether the Constitution required equal or identical rates. And the court in *Santa Clara* found article XIII, section 19 does not "[m]andat[e] application of identical tax rates." (*Santa Clara*, *supra*, 87 Cal.App.5th at p. 369.) Another court in *Merced* reached a similar conclusion, finding article XIII, "[s]ection 19 does not mandate that the same tax rate must be applied to utility property as is applied to locally assessed property." (*Merced*, *supra*, 109 Cal.App.5th at p. 851.) But neither case discussed *comparability*.

Appellants, however, do not present a cogent argument for identical rates if that was their intention. First, even though appellants use phrases like "same rates" and "equal rates" in their opening brief, they never plainly state equal rates are constitutionally required, nor do any of their headings use such words to frame their argument. (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"].) Second, if appellants were originally arguing for identical rates, they abandon such an argument in their reply brief, stating, "Appellants do not argue that [article XIII, s]ection 19 requires the 'exact' same rate . . . . All agree that '[e]xact equality is not possible under any system of taxation.' (*People v. Keith Railway Equipment Co.* (1945) 70 Cal.App.2d 339, 351, italics added.)"

Arguing for equal or identical rates would also be an attack of section 100. Unitary taxation under section 100 requires countywide tax rate areas that will necessarily have a different tax rate than the many individual tax rate areas within a

8

county.  This is seen in appellants' claims for relief seeking refund of taxes between the rate they pay and the *average* of tax rates within the County.[4]  An average is not identical to the parts comprising the average.  Even if utility property is taxed at the average rate in the County, utilities will be paying a higher rate than some other property holders and a lower rate than other property holders within a county, but not an identical rate to all property holders.  Therefore, if equal or identical rates were constitutionally required it would seem fatally inconsistent with section 100 that streamlines unitary taxation by creating countywide tax rate areas.  But appellants confirm multiple times they "agree that [s]ection 100 is not facially unconstitutional."  Nor do they seek the consequential return to being subjected to thousands of taxing jurisdictions.

Appellants therefore do not present a cogent argument that identical rates are constitutionally required, so this cannot be a basis for us to conclude the trial court erred. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [" 'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record' "].)  We also consequently conclude *Santa Clara* and *Merced* are not on point to the case appellants present us in this appeal.[5]

Appellants do present a cogent argument for rate comparability.  Appellants state: "The only question presented is whether [article XII, s]ection 19 requires rate

---

[4]     "This average is calculated by dividing (1) the sum of all ad valorem property tax levies for a given county per year by (2) the sum of the assessed values of all property in that county for that year." (*BNSF*, *supra*, 7 F.4th at p. 882.)

[5]     For the same reasons we denied appellants' request for supplemental briefing to address *Merced*, which was filed after briefing concluded in this case.  We also denied requests of two groups (one led by the California Senior Alliance and one led by California Taxpayers Association) to file amicus curiae briefs because neither addresses comparability.

*comparability*." (Italics added.) Appellants' briefs are also organized with headings arguing for "[c]omparable [r]ates." Appellants explain: "Section 100's formula can sometimes produce constitutional rates, comparable to those applicable to locally assessed property. For example, in counties with minimal or very stable debt service, the tax rates applicable to utility and other property *tend to be comparable*." (Italics added.) They also phrase their position as challenging "markedly higher tax rates," "a strikingly higher rate," and "[e]xcessive taxation of utility property." We therefore understand appellants are arguing the tax rate for state-assessed and locally-assessed property must be comparable and the rate differential between these rates in the County is unconstitutional because it is not comparable.

Appellants' comparability argument, though cogent, also fails to establish error because they have not presented any means to determine comparability. (See *Carmichael*, *supra*, 108 Cal.App.5th at p. 297.) Appellants comparability argument does not fully answer the question presented by the demurrer, whether appellants can state a claim that the County's rates under section 100 are unconstitutional. There are two steps to this legal analysis: (1) Is comparability required, and if so (2) do the County's rates violate the comparability requirement. Appellants address the first question but do not address the second question. Even assuming comparability is a requirement, appellants do not explain what rate comparability means or what kind of legal standard we or the trial court could articulate to determine whether the County's rates are constitutionally comparable.

We can use real tax rates to make the issue more concrete. In their complaint and opening brief, appellants present a table of two sets of tax rates applied in the County— "County [a]verage [p]roperty [t]ax [r]ate" and "[u]tility [p]roperty [t]ax [r]ate." The differences between these two rates are as low as 0.4361 percent in tax years 2014-2015 and as high as 0.7459 percent in tax years 2020-2021. But appellants have not sufficiently presented to the trial court or to this court what represents the bounds of

10

comparability—for example, whether a difference of more than 0.4 percent between rates would render them not comparable.

Appellants have never articulated a formula, a standard, or other analytical tool to determine constitutionally comparable rates. Appellants routinely use locally-assessed property tax rates under section 93's formula to show how much higher their rates are in the County under section 100, but appellants never argue section 93's formula is the tax rate formula the County must apply to them or that utility company property must be taxed under the same formula as locally-assessed property. Again, appellants claim section 100 can produce comparable rates. Moreover, they assert: "The shocking rate disparities that prompted [a]ppellants' refund actions emerged relatively recently, long after [s]ection 100's enactment." But without a comparability standard for which to apply to the rates the County imposed, neither we nor the trial court could ever independently confirm appellants' subjective assessment the rates became unconstitutionally disparate.

Appellants also do not present authority for what state-assessed property tax rates should be compared against to determine comparability. Their arguments and complaint assume a county's average rate for locally-assessed property should be the baseline. But none of the authorities they cite mandate using such an average. It is also possible the spread within a county's many tax rate areas is so large that the average rate is not at all comparable from the lowest rate or the highest rate. But this again depends on how comparability is defined and analyzed.

The main legal authorities appellants rely on also do not provide any definition for comparability in which to assess the County's rates: (1) article XIII, section 19; (2) article XIII, section 1; and (3) our Supreme Court's opinion in *ITT*. We will briefly examine each of these sources and conclude they do not necessarily disallow the rates the County applies to utility company property under section 100 because they do not define the bounds of comparability.

A

*Article XIII, Section 19 Does Not Define Comparability*

Appellants argue article XIII, "[s]ection 19 contains an unequivocal mandate for comparability in taxation," and "without comparability in the *tax rate*, utility property cannot bear the 'same' burden of taxation as other property, as [article XIII, s]ection 19 requires."

Article XIII, section 19 mandates the Board shall annually assess utility company property, and then states: "This property shall be subject to taxation to the same extent and in the same manner as other property." Appellants have not established a means to determine the County's tax rates imposed under section 100 are not to the same extent and the same manner as other property under section 93. Both provisions impose a general 1 percent levy and then a debt service component. Though the debt service component is not identical, appellants again are not contending the need for exact parity. Further, the extent and manner of taxation under sections 93 and 100—both an ad valorem tax on all property comprised of a 1 percent levy and a debt service component—is arguably within the realm of comparability depending on how comparability is defined. But appellants do not provide an understanding of comparability to precisely determine if that is or is not satisfied by the County's rates, even if article XIII, section 19 requires tax rate comparability. (*Carmichael*, *supra*, 108 Cal.App.5th at p. 297 ["We presume [the trial court's] ruling is correct, and [appellants] have the burden of showing error on appeal . . . . We will not develop [appellants'] argument for them"].)

B

*Article XIII, Section 1 Does Not Define Comparability*

Appellants contend throughout their briefs, "Uniformity is the bedrock of California's constitutional property tax system." This is based on the assertion "[e]qual tax rates are at the heart of [article XIII, s]ection 1." Thus, appellants assert construing

12

article XIII, section 19 "to allow utility property to be taxed at a rate several times higher than the rate applied to other property would bring the provision into conflict with [article XIII, s]ection 1."

Article XIII, section 1 states: "Unless otherwise provided by this Constitution or the laws of the United States: [¶] (a) All property is taxable and shall be assessed at the same percentage of fair market value. When a value standard other than fair market value is prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value. The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value. [¶] (b) All property so assessed shall be taxed in proportion to its full value."

The plain language of article XIII, section 1 does not impose a definable limit on tax rates. The section requires all property to be taxable and "the general rule that property taxes in California must be ad valorem." (*City and County of San Francisco v. All Persons Interested in the Matter of Proposition G* (2021) 66 Cal.App.5th 1058, 1076.) Article XIII, section 1 also addresses assessment rates, but appellants are not challenging assessment rates. Thus, the plain language of article XIII, section 1 does not decide the issue at hand.

There is a general principle of taxation uniformity in California, and article XIII, section 1 is said to "establish[] the principle of uniform assessment and taxation." (*Valley Baptist Church v. City of San Rafael* (2021) 61 Cal.App.5th 401, 411.) The core of article XIII, section 1 has been in place since 1879. (Cal. Const. of 1879, art. XIII, § 1; 1 Flavin, Taxing Cal. Property (4th ed. 2024) § 1:8 [the 1879 Constitution "is basically the California Constitution of today"].) But much like comparability, even assuming the uniformity principle applies here, appellants have not explained how section 100's 1 percent levy and debt service formula for state-assessed property is not uniform with section 93's 1 percent levy and debt service formula for locally-assessed property.

13

Taking appellants' factual allegations as true, the sections do produce nonidentical rates, but this does not necessarily mean they produce not comparable or not uniform rates.

C

*ITT Does Not Define Comparability*

Finally, appellants contend our Supreme Court's opinion in *ITT* requires finding the County's tax rates invalid.

In *ITT*, our Supreme Court answered the question of "whether the 'valuation rollback' provision of article XIII A, section 2, subdivision (a), of the California Constitution, part of the 1978 initiative known as Proposition 13, applies to unit taxation of public utility property." (*ITT, supra*, 37 Cal.3d at p. 862.) Relevant to this case, our Supreme Court addressed the utility's argument that Proposition 13 applies to utility property through article XIII, section 19 because the phrase " 'subject to taxation to the same extent and in the same manner as other property' . . . requires public utility property to be *valued* on the same basis as other property, and thereby effectively applies the valuation rollback provision to the unit taxation of public utility property." (*ITT*, at pp. 869-870.) The court rejected this argument because it found "the purpose of article XIII, section 19, is broadly to authorize the unit taxation of public utility property [citations], and more narrowly to '[assure][] adequate valuation of utility property.' " (*ITT*, at p. 870.) In a line central to appellants' arguments here, the court explained the " 'same extent and in the same manner' " provision of article XIII, section 19 "does not impose a requirement of equal valuation between public utility and other property, but simply specifies that public utility property, after it has been placed on the local tax rolls, be levied on at the same *rate* as locally assessed property, instead of being subject to a special gross receipts 'in lieu' tax. In other words, this comparability requirement was not intended to apply to the *valuation* of public utility property, but only to its *taxation* after assessment." (*ITT*, at p. 870.)

14

We conclude *ITT* does not invalidate the County's tax rates. Appellants do not contend *ITT* mandates identical or equal rates. Instead, appellants argue, "The Supreme Court's determination that [article XIII, s]ection 19 requires comparable tax rates is a holding that binds this [c]ourt." They explain further: "*ITT* itself reflects the understanding that some approximation is inevitable, describing [article XIII, s]ection 19's 'same *rate*' mandate as a 'comparability requirement.' (*ITT*, *supra*, 37 Cal.3d at p. 870.) It is this comparability that [a]ppellants seek, and which [article XIII, s]ection 19 demands." Even if we were to agree with this conclusion, it would not resolve the issue of what comparability means and how to discern the appropriate "approximation" for comparable rates. Nowhere in *ITT* did our Supreme Court analyze the bounds of the comparability requirement.

D

*Conclusion*

For us to conclude the trial court erred, appellants must establish legal sufficiency of their complaint alleging the County's rates, derived by the section 100 formula, are unconstitutional. Appellants fail to present a cogent argument their claim can rest on identical rates being constitutionally required. Appellants do clearly articulate an argument article XIII, "[s]ection 19 requires comparability in tax rates between utility and other property." But this argument is incomplete. Even were we to agree the Constitution requires comparability, appellants have not provided any means for us to conclude they can state a valid claim the County's rates are unconstitutionally not comparable. Appellants have therefore not carried their burden of establishing error in sustaining defendants' demurrer, nor have they presented any ability to amend their complaint to state a viable cause of action.

15

DISPOSITION

The judgment is affirmed.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(5).)


                                                    /s/_____
                                                    ROBIE, Acting P. J.


We concur:


/s/_____
RENNER, J.


/s/_____
MESIWALA, J.